**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

**DANNY L. HALL,**

            **Plaintiff,**

**-v-**                                        **CASE NO. 2:09-cv-113-FtM-DNF**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

            **Defendant.**
_____/

**OPINION AND ORDER**[1]

Plaintiff filed an application for a period of disability and disability insurance

benefits on January 15, 2002, alleging an onset of disability of January 7, 2002 (Tr.

93-95).  The Agency denied this application in initial and reconsideration determinations

(Tr. 30-31, 53-56, 60-62).  Plaintiff timely requested and appeared at a hearing in Ohio

before an administrative law judge (ALJ) (Tr. 63, 522-51).  In the hearing decision dated

August 25, 2004, the "ALJ" found Plaintiff not disabled (Tr. 32-47).

Upon Plaintiff's timely request to review the "ALJ's" decision, the Appeals Council

remanded the claim to the hearing office on December 8, 2004 (Tr. 50-52).  After remand,

Plaintiff appeared and testified at a second hearing before an "ALJ" in Ohio  (Tr. 493-521).

The "ALJ" issued a hearing decision on June 20, 2005, in which he again found Plaintiff

---

[1]        Both  parties  have consented to the exercise of jurisdiction by a magistrate judge, and
the case has been referred to the undersigned by an Order of Reference signed by Judge
John E. Steele dated June 22, 2010.  (Doc.# 13).

was not disabled (Tr. 11-29). The "ALJ's" June 2005 hearing decision became the final

decision of the Commissioner when the Appeals Council denied his request for review on

October 3, 2005 (Tr. 6-9).

Plaintiff filed a complaint in Federal District Court in November of 2005. *Hall v.*

*Commissioner of Social Security*, Case No. 2:05-CV-559-FtM-29SPC (M.D. Fla. 2002).

After each party filed briefs, the magistrate judge issued a report and recommendation

("R&R") recommending this case be remanded to the Commissioner for further proceedings

(Tr. 637-66) (Doc. No. 18). On February 9, 2007, this Court remanded this matter in

accordance with the R & R. (Tr. 667-69).

Thereafter, the Appeals Council remanded this matter to the hearing office to

conduct a new hearing (Tr. 670-73). On October 19, 2007, Plaintiff appeared and

testified at a new hearing before a new "ALJ" in Fort Myers, Florida (Tr. 1484-1515).

At this hearing, Plaintiff amended his alleged onset date to June 28, 2001 (Tr. 1487-

88). The new "ALJ" issued a hearing decision on December 10, 2007, finding Plaintiff

was not disabled (Tr. 598-612). Plaintiff filed written exceptions, but the Appeals

Council found no reason to take jurisdiction (Tr. 552-97). The "ALJ's" hearing decision

became the new final decision of the Commissioner and is now ripe for review under 42

U.S.C. § 405(g).

The Commissioner has filed two transcripts of the proceedings (hereinafter referred

to as "Tr." followed by the appropriate page number), and the parties have filed legal their

memoranda.  For the reasons set forth below, the Court finds that the Commissioner's

decision is due to be **reversed and benefits awarded.**

> **I.      SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S
> DECISION AND STANDARD OF REVIEW**

Plaintiff  is entitled to disability benefits when he is unable to engage in substantial

gainful activity by reason of  any medically determinable physical or mental impairment

which can be expected to either result in death or last for a continuous period of not less than

twelve months.  42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A).  The Commissioner has

established a  five-step sequential evaluation process for determining whether  Plaintiff is

disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v.*

*Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of  persuasion

through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*,

482 U.S. 137, 146 n.5 (1987).

The decision of Administrative Law Judge Dores D. Mc Donnell, Sr., dated

December 10, 2007, found Plaintiff was not under a disability as defined in the Social

Security Act, at any time from June 28, 2001, the alleged onset date, through December 31,

2002,  date last insured (DLI).  20 C.F.R. 404.1520(g). (Tr. 612).

At Step 1 the "ALJ" found  Plaintiff had not engaged in substantial gainful activity

since his alleged onset date of June 28, 2001.  At Step 2 the "ALJ" found Plaintiff suffered

from severe impairments of diabetes mellitus, atrial fibrillation, depression, anxiety, and

post traumatic stress disorder ("PTSD") (Tr. 603).   At Step 3 the "ALJ" found through the alleged onset date of June 28, 2001, through December 31, 2002 (DLI),  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 605).  At  Step 4  the "ALJ"  determined  Plaintiff has  the residual functional capacity to perform a wide range of medium work.[2]   (Tr.  606).  At Step 5 the "ALJ" found Plaintiff through the alleged onset date of June 29, 2001, through December 31, 2002, (DLI) was unable to perform his past relevant work as a truck driver, school bus driver, owner-operator-driver for trucking companies and automobile mechanic (Tr. 610, ALJ's decision).

In reviewing a decision by the Commissioner, the District Court is bound to uphold the Commissioner's findings if  they are supported by substantial evidence and based upon proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997).  Factual findings are conclusive if supported by "substantial evidence," which is more than a scintilla and consists of such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Lewis v. Callahan*, 125 F.3d at 1440.  The Court does not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  If  the Commissioner's decision is supported by substantial evidence,

---

[2]        Medium work: ["L]ift/carry 50 pounds occasionally and 25 pounds frequently, sit six hours in an eight hour workday, and stand/walk six hours in an eight hour workday.

-4-

the Court must affirm even if the evidence predominates against the decision. *Wilson v.*

*Barnhart*, 284 F.3d at 1291.  However, the Court must conduct an exacting examination of

whether the Commissioner followed the appropriate legal standards in deciding the claim

and reached the correct legal conclusions. *Wilson v. Barnhart*, 284 F.3d at 1291.  The

failure to apply the correct law or to provide the reviewing court with sufficient reasoning

for determining that the proper legal analysis has been conducted will mandate reversal.

*Keeton v. Department of Health and Human Servs.*, 21 F.3d 1064, 1068 (11th Circ. 1994).

## II.  Review of Facts and Conclusions of Law

### A.     Background Facts:

Plaintiff was born on July 23,  1946[3] (Tr. 93), and  was sixty-one years old at the

time of the December 10, 2007, hearing decision (Tr. 612).[4]   Plaintiff reported he has a high

school education and has worked in the past as a truck driver, post-office custodian, school

bus driver, owner-operator-driver for several trucking companies, and as an automobile

mechanic (Tr. 108, 113-14, 118,123, 130-37, 169-70, 173, 502-03, 527-28, 687).

Plaintiff reports his conditions (gout, diabetes, hypertension) first bothered him and

he stopped working on June 26, 2001 (Tr. 107, 117).  He further stated that he stopped

working because of a "lack of work-unemployment" and was laid off on June 26, 2001 (Tr.

---

[3]          However, he was only  fifty-six years old when his disability insured status expired
on December 31, 2002 [Tr. 99, 679, 681].

107, 117, 527).  Plaintiff's  employer, Active USA, reported in January 2005 that he was still

employed with them as a truck driver, but he had been laid off from such work since May 29,

2002, after a March 2002 Department of Transportation physical (Tr. 105, 503).

Plaintiff contends he is disabled due to diabetes, gout, atrial fibrillation, hyper-

tension, hyperlipidemia, chronic pain/osteoarthritis of the right hand, gastroesophageal reflux

disease (GERD), post-traumatic stress disorder (PTSD), sleep apnea, and headaches (Tr. 107,

114, 117, 159, 528-32, 534, 537, 543-46 and Memorandum of Law).  Plaintiff primarily

reported: diabetes, chest pain, "thick" blood, nightmares, bad dreams, and a sleeping disorder.

(Tr. 528- 32).   Plaintiff  reported  having medication side effects that caused  him to lose his

grasp on  reality  (Tr. 531).  He  also reported he had a past history of  alcohol abuse  and

received treatment for this condition, and had no alcohol-related problems since 1997[5] (Tr.

534-36, 543).

> **B.    SPECIFIC ISSUES**
>
> **I.    THE ALJ FAILED TO STATE THE WEIGHT
> HE GAVE TO THE PLAINTIFF'S 2001 VA
> IMPAIRMENT RATING PER SSR 06-3p.**

On February 8, 2001, Plaintiff's disability rating due to his "PTSD" was increased from

30% to 50%, the increase was effective retroactively to November 17, 2000 (Tr. 1111). This rating

is prior to Plaintiff's "DLI" of December 31,  2002, and should have been considered as evidence

---

[5]    However, he admitted that he last drank on January 13, 2004, when he was put  in the
hospital and considered this  his  "last episode" (Tr. 534-535).

supporting the severity of Plaintiff's mental impairments while he was covered for disability

purposes. The Veteran's Administration ("VA") Rating Decision states that a 50% evaluation is

assigned for:

> "[o]ccupational and social impairment with reduced reliability
> and productivity due to such symptoms as: flattened affect;
> circumstantial, circumlocutory, or stereotyped speech; panic
> attacks more than once a week: difficulty in understanding
> complex commands: impairment of short- and long-term memory
> ( e.g. retention of only highly learned material, forgetting to
> complete tasks); impaired judgment; impaired abstract thinking:
> disturbances of motivation and mood; difficulty in establishing
> and maintaining effective work and relationships (Tr. 1111)".

The "ALJ" gave no weight to this evidence and the decision does not reflect that the

"ALJ" considered the "VA 's" finding in his evaluation. In the instant case, the Federal Court

specifically charged the "ALJ" to address a closer analysis of Plaintiff's "PTSD" symptoms.

Clearly, as SSR 06-3p indicates, these findings could provide "insight" into Plaintiff's mental

impairment. While the findings of 'an outside agency are not binding on the Commissioner' -

SSR 06-03p clearly states that such evidence cannot be "ignored and must be considered" *Kieser*

*v. Barthart,* 222 F. Supp. 2d 1298. 1303 (M.D. Fla. 2002),  *Hogard v. Sullivan.* 733 F. Supp.

1465, 1470 (M.D. Fla. 1990). "[A]lthough a VA disability rating is not binding on the

Commissioner, it is evidence that should be given great weight."

Furthermore, only five months after Plaintiff's "DLI", the "VA" rated Plaintiff as

100% disabled (Tr. 1115)). The "ALJ" stated at the hearing that the "VA" rated Plaintiff at

100% on April 29, 2005 (Tr. 1495). This statement was mistakenly adopted by the Court in

their previous decision (Tr.  662). However, according to the record the "VA" had established

that Plaintiff was 100% disabled by May 2, 2003, not April 29, 2005 (Tr. 1115). The Court had

previously stated that the "ALJ" was "not under any obligation to give great weight to the "VA's"

determination" because the 100% determination was "well over two years" after Plaintiff's

"DLI" (Tr. 662). Since the correct "VA" determination is May 2, 2003, only five months after

the "DLI" - not five years, the "ALJ" had an obligation to give great weight to this "VA"

determination *(Kieser v. Barnhart.* 222 F. Supp. 2d 1298, 1303 (M.D. Fla. 2002)).

**II.     THE ALJ POSED AN INCOMPLETE HYPOTHETICAL
          TO THE "VE" AND THEREFORE HIS FINDINGS ARE NOT
          BASED ON SUBSTANTIAL EVIDENCE.**

The "ALJ" included restrictions in his decision that were not part of the hypothetical

question posed to the "VE". These restrictions are not inconsequential. The "ALJ" directed

four hypothetical questions to the "VE". (Tr. 1507 - 1508). Based upon the second

hypothetical[6],  the "ALJ" gave a "medium" exertional level and a "complete exclusion" to

public contact. The "VE" testified that given these restrictions, Plaintiff could not perform his

past relevant work (Tr. 1508).  There was no testimony regarding whether or not Plaintiff

could perform other work with these restrictions.

A third hypothetical presented to the "VE" was at a "light" exertional level and

included the limitations "..... activity that does not involve heavy or frequent exposure to the

---

[6]      The first hypothetical question was based on a medium exertional level but included no
limitations resulting from any mental impairments.

public ... ." (Tr. 1508). In response to this hypothetical, the "VE" testified that Plaintiff could

perform the jobs of inspector, surgical instruments; assembler, small products II, and,

assembler, plastic hospital products (Tr. 1509)".

In his decision, the "ALJ" states that his finding of other work is based upon the

"VE's" testimony (however, the "VE" never testified about the existence of other work given

a heavier exertional level and a more restrictive public contact level). Therefore, the "ALJ's"

findings are based upon an incomplete hypothetical and cannot be considered substantial

evidence *(Grimes v. Barnhart,* Case No. 04-G-3065-S. 2006 U.S. Dist. LEXIS 21300 (N.D.

Ala. 2006) citing to *Jones v. Apfel*, 190 F. 3d 1224 (11th Cir. Ala. 1999)).

In the instant case,  the hypothetical posed to the "VE" substantiating the other work

cited is not based on the "RFC" found by the "ALJ". There is no expert testimony that

Plaintiff can perform the other work cited or any other work at the "RFC" found by the

"ALJ".  Therefore the "ALJ's" finding that Plaintiff can perform other work that exists in

significant numbers is not based on substantial evidence.

Additionally, the increase of exertional restrictions and public contact should

not be considered harmless error as these conditions are contrary to the other work cited by

the "ALJ". All of the other work testified by the "VE" and determined by the "ALJ" that

Plaintiff can perform are at the light exertional level. There is no expert testimony that

Plaintiff can perform other work once the hypothetical is revised to include,"... lift/carry 50

pounds occasionally and 25 pounds frequently ... ." Also, according to the "DOT", all of the

jobs found by the "ALJ" that Plaintiff could perform include the 'Worker Function': "taking instructions-helping". Considering this 'Worker Function' role, the Commissioner has provided no evidence that Plaintiff could perform the other work cited or any other work when the public contact restriction is reduced from "no heavy or frequent" public exposure to "no" public contact. Therefore, because the "ALJ" based his findings on the fact that Plaintiff can perform other work (with the limitations included in his altered "RFC"), the revisions in the "ALJ's" "RFC" are not harmless error as they were not inconsequential to his ultimate finding that Plaintiff is not disabled. (*Bain v. Astrue*), 319 Fed. Appx. 543; 2009 U.S. App. LEXIS 5203 (9''' Cir. Or. 2009)). Substantial evidence supports Plaintiff s limitations.

**III.    DID THE ALJ FAIL TO EVALUATE PLAINTIFF'S GLOBAL ASSESSMENT OF FUNCTIONING ("GAF") SCORE AND HIS POST-TRAUMATIC STRESS DISORDER AS DIRECTED BY THE FEDERAL COURT**

This hearing was pursuant to the Federal Court's remand in which the Court found that the prior "ALJ" decision had ignored several Global assessment Functioning ("GAF") scores of 50 recorded during the period at issue (June 28, 2001 through December 31, 2002 (Tr. 657). The Court found that "....a "GAF" of 50 is considered severe under the Regulations and would change the nature of the "ALJ's" ruling (Tr. 657). Therefore the Court remanded the case with a charge to the "ALJ" to determine:

(1)    whether or not Plaintiff maintained a "GAF" of 50 or below during the period at issue, and

(2)    then determine based upon all of the evidence whether or not Plaintiff met

Listings 12.06 (Tr. 665).

Contrary to the testimony of medical expert, David Kazar, Ph.D., and the scores recorded by Plaintiff's treating psychiatrist, Judith A. Sigmund, M.D., the "ALJ" found the record did not support that Plaintiff was predominantly functioning at a "GAF" of 50 during the period at issue.

The "ALJ" give little weight to Plaintiff's treating psychiatrist, Dr. Sigmund, that Plaintiff was functioning at a "GAF" score of 50 during the period at issue.  However, the record shows that Dr. Sigmund's findings are not inconsistent with the record and should have been afforded controlling weight.  (20 C.F.R. §404.1527).

On January 8, 2001, Margaret Arnott, Ph.D, a staff psychologist with the VA completed a "PTSD Assessment".  Dr. Arnott reported a series of traumatic experiences from Plaintiff's two tours of duty in Viet Nam (Tr. 303).  Plaintiff has nightmares about going into villages and having to kill people and reports "much guilt and shame regarding these missions" (Tr. 304).  Plaintiff's reports of these traumas seemed "dissociative in nature" and he reported "not feeling anything" when they occurred (Tr. 304).  Dr. Arnott reported:

> "[H]e re-experiences his traumas in the forms of nightmares and intrusive thoughts. He reports these have worsened since he stopped drinking three years ago. He reports problems with memory, attention, and concentration. which were evident at times in the interview ... He reports difficulty in controlling his anger and finds himself more irritable lately." "Nothing pacifies me." "He reports emotional numbing and feeling of detachment with family and friends."  (Tr. 303-304).

Thus, the MMP1-2 provided a DSM-IV diagnosis with "chronic" PTSD and

"Adjustment disorder" on Axis I.  On Axis V he had a "GAF" 50 which indicates:

> Serious symptoms (e.g. suicidal ideation, severe obsession
> rituals, frequent shoplifting OR any serious impairment in
> social, occupational or school function (e.g., no friends, unable
> to keep a job).

"GAF" 50, or "serious symptoms" corresponds to the "marked" criteria of "part B" of Listing

12.06 because "GAF" 51-61 represents "moderate symptoms" and would be equivalent to

"moderate" difficulty in functioning under "part B" of the Listing, *McCloud v. Barnhart*. 166

Fed. Appx. 410 (11 '11 Cir. 2(06). The consequence of this assessment is that Plaintiff was

recommended for "residential treatment" and the "treatment team" agreed that he met the

criteria (Tr. 305, 306). Thus, even though Plaintiff elected not to enter a psychiatric hospital.

the fact that he was approved for admission is substantial evidence of the severity of his

mental impairment and more importantly, refutes the "ALJ's" finding that Plaintiff's mental

impairment was only "moderate" (Tr. 306). *McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th

Cir. 2006).  In the instant case, the "ALJ" should have found claimant's "GAF"score of 50

indicative of a severe impairment.

Once the "part A" criteria are met, the "part B" functional limitations are central in

determining whether a claimant is disabled. A review of Plaintiff's treating psychiatrist's

evaluations of Plaintiff, specifically his "GAF" scores during the period at issue, reflects his

functioning ability. During the period at issue, Plaintiff only reached a "GAF" of 60 on one

occasion, July 3 I, 2001 (Tr. 444). The balance of the time period, Plaintiff was evaluated on at least four different occasions and each time never achieved a higher "GAF" than 50 (Tr. 442, 440, 438, 436). This indicates Plaintiff was suffering from ""serious symptom" including "unable to keep a job" which corresponds to "marked" limitations pursuant to "part B" of Listing 12.06 (T. 442, 440, 438, 436). Furthermore, this range of "GAF" scores at 50 and below reflect a severe impairment. *McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006).

The findings of Dr. Sigmund are not inconsistent with the record, especially those of Dr. Amott and the "VA" treatment team" and support a finding that Plaintiff met the Listing 12.06. The "ALJ" states that he gives great weight to Dr. Kazar, the medical examiner's ("ME's) opinion that Plaintiff did not meet Listing 12.06. However, the "ME's" opinion is not supported by the record or the Plaintiff's testimony. Contrary to the "ALJ's" statement, the "ME" was dismissed prior to Plaintiff's testimony (Tr. 1500). This is significant because the "ALJ" states that the "ME's" testimony regarding Listing 12.06 was based on Dr. Kazar's review of the record and Plaintiff's testimony. (Tr.  (06). However, Dr. Kazar was not present when Plaintiff testified that during the period at issue he was experiencing "PTSO" symptoms, including flashbacks of the Viet Nam war and constant nightmares on a regular basis (T. 1503). Therefore, the "ALJ" has given great weight to an  expert opinion that was not supported by all of the evidence. It is also noted that the "VE" testified that taking into consideration the Plaintiff's testimony, he would not be able to perform the other work referenced (T. 1510). However, the "ME" found Plaintiff's mental impairments less severe but

unlike the "VE's" testimony, but again his opinions were not based on Plaintiff's testimony, because the "ALJ" dismissed the "ME" prior to the "ME" having the opportunity to hear Plaintiff's testimony.

Per 20 CFR §404.1512 (a) and 20 CFR §404.1528 (b)( c), Plaintiff has the burden of proving the signs of his impairments by providing medical evidence based on medically acceptable clinical and laboratory diagnostic techniques. Plaintiff has met this burden by providing his mental health records (as well as all diagnostic tools utilized by his treating staff). According to SSR 96-2p. statements and assessments of treating physicians are entitled to controlling weight (SSR 96-2p) (see *Holt v Barnhart*, 365 F. Supp 2d (D. Ala. 2005). Dr. Sigmund treated Plaintiff from October 20, 2000 through November 10, 2003 (T. 427-446). Therefore, the AU should have given controlling weight to Dr. Sigmund because her opinion brings with it:

> "[a] unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations ...  20 CFR§404.1527 (4)(d)(2)".

Therefore. this treatment history should have been considered long enough for the treating medical source to have obtained a longitudinal picture of Plaintiff's impairments and her opinions should have been given more weight than a non-treating source (20 CFR §404.1527(d)(2)(I).

**IV.   THE ALJ 'S RELIANCE ON THE VOCATIONAL
          EXPERT'S TESTIMONY WAS NOT SUPPORTED BY
          SUBSTANTIAL EVIDENCE.**

The "VE" testified that Plaintiff could perform the following jobs: inspector, surgical

instruments (DOT 712.684-050), assembler, small products  (DOT 739.687-030) assembler,

plastic hospital products (DOT 712.687-(10) given the limitations/restrictions previously

posed by the "ALJ".

The "VE" further stated that her testimony was not inconsistent with the Dictionary of

Occupational Titles ("DOT").  However this testimony is inconsistent with the "DOT" in four

areas: sit/stand option: public exposure limitation: temperament; and the SVP/GED.  The

"ALJ" was unable to resolve the conflict because he was misinformed by the "VE" regarding

her inconsistencies with the "DOT".

A sit/stand option is not recognized in the "DOT".  However, the "VE" testified that

the named jobs can be performed with such an option. The "VE" further stated that jobs with

sit/stand options are light positions with elevated work stations and "accommodating" stools

that allow the worker to switch to other tasks (Tr. 159).  However, the "VE's" other additional

and contradictory statements are not consistent with the "DOT" and the "VE" did not state her

source for this information

The "VE" further testified that a restriction of heavy/frequent exposure to the public

with moderate limitation in social functioning would not preclude the named positions.

However, according to the "DOT", all of the jobs offered by the "VE" include the following

'Worker Function': taking instructions from people, helping people; these restrictions could

impact these jobs. The "VE" stated that the degree of social functioning is not affected in

these jobs because the employee would only need to interact with his co-workers, implying

that the Social Security definition of social functioning only relates to public interaction.

However, according to the Social Security Administration's regulations, the "VE's" statements

> "[S]ocial functioning refers to your capacity to interact
> independently, appropriately, effectively)" and on a sustained
> basis with other individuals ... Social .functioning work
> situations may involve interactions with the public, responding
> appropriately to persons in authority (e.g., supervisors), or
> cooperative behaviors involving Co-workers (20 CFR Part 404,
> Subpart P, Appendix 1; Listing 12.00 Mental Disorders-Adult)".

were contrary to Social Security regulations and not found within the "DOT".

Another restriction the "ALJ" posed in the hypothetical to the "VE" was that the job

would be not particularly stressful. According to the "DOT", two of the jobs which the "VE"

presented to the "ALJ" -  inspector,  surgical instruments (DOT 712.684-050. SVP 2) and

assembler, small products II (DOT 739.687-030, SVP 2) requires the following worker

temperament: attain precise set limits, tolerances and standards. This level of precision

is not compatible with a low stress requirement. Furthermore, according to Dr. J. Sigmund.

Plaintiff is markedly impaired in his ability to set limits, tolerances and standards (T. 426).

A further inconsistency is that all of the jobs listed by the "VE" carried an "SVP" level

2 and a GED Reasoning Level 2, which is inconsistent with the limitation "simple one step

"activities (Tr. 1508) *(Estrada v. Barnhart,* 417 F. Supp 2d 1299, 2006 U.S. Dist. LEXIS

8132.

The General Education Development (GED) embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance (Dictionary of Occupational Titles. U.S. Dept of Labor 4ᵗʰ ed. 2000. Appendix C). There are three divisions within the GED: Reasoning. Mathematical and Language. All three of the positions cited by the "VE" have a GED Reasoning level of 2.

Thus, all of the jobs to which the "VE" testified have a Reasoning Level 2. These jobs should not have been included within a list of jobs with a restriction of simple, one-step tasks. Furthermore, the "VE" testimony that a restriction to simple one-step activities is not precluded by a Reasoning Level of 2 is inconsistent with SSR 00-4p (see *Estrada v. Barnhart*, 417 F. Supp 2d 1299, 2006 U.S. Dist. LEXIS 8132).

The "VE" stated that her testimony was consistent with the "DOT". However, as discussed above there arc several inconsistencies and the "ALJ" should not have relied on this "VE" testimony.  (The "ALJ" made an affirmative finding that it was consistent with the DOT (T. 612) *(Akins v. Comm'r of Soc. Sec .*. 2009 U.S. Dist. LEXIS 82640 (M.D. Fla. September 10, 2009).

Although the law of the Circuit provides that when there is a conflict between the "VE'"'s testimony and "DOT", the "VE" can trump the "DOT", the Court in *Akins* found that this ruling does not apply when the "VE" affirmatively testifies that her testimony is not inconsistent with the "DOT" since the "ALJ" is not aware that there is an inconsistency that he

must resolve *(Miller v. Comm'r of Soc. Sec .. 246* Fed. Appx. 660, 662, 2007 WL 2461881

(11th Cir. 2007) (unpublished): *Jones v. Apfel,* 190 F. 3d 1224 (11th Cir. 1999): *Akins v.*

*Comm'r of Soc. Sec ..* 2009 U.S. Dist. LEXIS 82640 (M.D. Fla. September 10, 2010).

 Pursuant to SSR 00-4p, the "ALJ" should have asked the "VE" to clarify her

testimony regarding the sit/stand option; why the limitations in the area of public contact

and social functioning are not effected by the jobs 'Worker Function' duties; why a low

stress restriction is not contradictory to the need to attain precise set limits, tolerances and

standards; and why jobs with a Reasoning level of 2 are not precluded from one-step

simple restrictions

 A careful review of SSR 00-4p clearly shows that an "ALJ's" review of the "DOT"

comes first, upon any suggestion by the "VE" that a job can be performed.  Once the "VE"

identifies any job, the "ALJ" must compare that job with the "DOT" requirements to

determine if a conflict exists. Without an "ALJ" reviewing the actual "DOT", an "ALJ"

cannot know if there is a conflict between the "DOT" and the "VE" testimony when, if relying

on the "VE", the "VE's" testimony is wrong, fabricated, or contains omissions.

 When the "VE" testimony Is inconsistent with the "DOT"there is a very high standard

that a "VE" must meet before a "VE" testimony can trump the "DOT". In *Jones v. Apfel,* 190

F. 3d 1224 (11th Cir. Ala. 1999), the Eleventh Circuit only found the "VE" testimony

constituted substantial evidence when the "VE" based her opinion on: (1) "local information";

(2) the "VE's" personal survey; (3) his contacts with employers; (4) contact with other "VE's";

and the "VE" surveyed literature such as (5) census reports; (6) county business patterns and (7) vocational surveys. In *Jones,* this was "significant" and satisfied a high standard of substantial evidence requirements needed to support "ALJ" decisions that rely on "VE" testimony (Jones v. *Apfel,* 190 F. 3d 1224 (11th Cir. Ala,1999)).  In this case, no such high standard was met because there was no reliable foundation.

The "VE" further stated that her testimony was not inconsistent with the "DOT" and offered no other substantial evidence to support any potential conflict.  Since the "ALJ" based his decision that Plaintiff could perform other work on the "VE's" misrepresentations, his findings are not supported by substantial evidence.

It must be emphasized that this is a Step 5 analysis where the burden is not on the claimant but rather on the "ALJ" to prove claimant can perform other jobs despite his limitations. A claimant does not have to cross-examine the "VE" or rebut his responses. It would be misplaced to hold that to be the case. Because of the non-adversarial nature of Social Security proceedings. an "ALJ" has the duty to affirmatively develop the record and the arguments "both for and against granting benefits" *(Sims v. Apfel.* 530 U.S. 203. III (2000)). It is well settled that an "ALJ" is not relieved of this obligation even where the claimant is represented by counsel.  *Shaw v. Chater.* 221 F. 3d 126. 131 (2d Cir. 2000)).

In *Prochaska v. Barnhart.* 454. F. 3d 731. 735 (quoting *Haddock v. Apfel.* 296 F. 3d 2084. 1087 (10th Cir. 1999)). that court made it clear the affirmative duty of the "ALJ" extends beyond merely asking the "VE" whether the testimony is consistent with the "DOT"; that is,

the "ALJ" must "elicit a reasonable explanation for any discrepancy". Because the "ALJ" has

the burden at step 5, the "ALJ's" reliance upon the "VE" testimony without developing the

record and obtaining a "reasonable explanation" for the conflicts. violated SSR 00-4p.

Therefore. the decision is not supported by substantial evidence in that it is premised on "VE"

testimony (20 CFR §404.1560(c)(2).

> **V.     THE ALJ'S SIT/STAND OPTION DOES NOT COMPLY
> WITH SSR 96-9P.**

The "ALJ's" "RFC" findings included that Plaintiff is limited to a sit/stand option

(among other limitations) (T. 606). In the instant case, the "ALJ's" second hypothetical

question posed to the "VE" initially included the term "alternate positions" but he later

clarified to the "VE" that he considered this a sit/stand option (Tr. 1508 and 1509). According

to SSR 96-8p, an "RFC" assessment must determine the claimant's abilities on a function by

function basis and should express a determination of the *most* a claimant can perform. *Arocho*

*v. Sec. of HHS.* 670 F.2d 374. 375 (151 Cir. 1982).

Therefore, in this case. presenting the sit/stand option to the "VE" represents an

incomplete hypothetical to the "VE" and the "ALJ's" findings based on the testimony from this

hypothetical cannot be considered substantial evidence *(Jones v. Apfel.* 190 F. 3d 1224

( 11th Cir. Ala. 1999)).

Remand to the Commissioner for further fact-finding is unnecessary because all of the

essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that Plaintiff was disabled.  *See Davis v. Shalala*, 985 F.2d 528,

534 (11th Cir. 1993); *accord, Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Bowen v.

Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

### III.  Conclusion

This Court finds that the ALJ has failed in his burden to articulate the effect of all of the

Plaintiff's combined impairments in determining his disability.  *Walker v. Bowen*, 826 F.2d 996,

1001 (11th Cir. 1987).  Additionally, the ALJ has failed in his burden to provide substantial

evidence to this Court that  Plaintiff has the residual functional capacity to perform the exertional

and non exertional requirements of any work which exists in the national economy.

For the reasons stated above, the Clerk shall enter judgment pursuant to sentence four of

42 U.S.C. § 405(g) **reversing** the decision of the Commissioner and **awarding** the Plaintiff

benefits and close the file.

**DONE AND ENTERED** in Chambers at Fort Myers, Florida, this 7th  day of December

2010.

_____

DOUGLAS N. FRAZIER

UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:
Susan Roark Waldron, A.U.S.A.
Carol Avard, Esquire